UNITED STATES BANKRUPTCY COURT       <u>NOT FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK

---

In re:

CRANE ENTERPRISES, LLC,       Case No. 25-10405 (DSJ)

      Debtor.       Chapter 11

---

### DECISION AND ORDER DENYING THE MOTION OF MICHAEL E. CRANE AND DANIEL M. CRANE TO DISMISS DEBTOR'S CHAPTER 11 CASE

**APPEARANCES:**

**SILVERMAN LAW OFFICE, PLLC**
*Counsel to the Debtor*
4 Terry Terrace
Livingston, NJ 07039
By:    Brett Silverman, Esq.

**WILK AUSLANDER LLP**
*Special Litigation Counsel to the Debtor*
825 Eighth Avenue, 29th Floor
New York, NY 10019
By:    Eric J. Snyder, Esq.

**M.C. SHAPIRO LAW GROUP PC**
*Counsel for Movants, Michael E. Crane and Daniel M. Crane*
3 Grace Avenue, Suite 109
Great Neck, NY 11021
By:    Mitchell C. Shapiro

**SCHNEIDER BUCHEL LLP**
*Counsel for Xander Corp.*
60 Crossways Park Drive West, Suite 340
Woodbury, NY 11797
By:    George J. Mullane

**WILLIAM K. HARRINGTON**
The United States Trustee for Region 2
Alexander Hamilton U.S. Custom House
One Bowling Green, Room 534
New York, NY 10004
By:    Andrea B. Schwartz

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Michael E. Crane and Daniel M. Crane ("**Movants**") to dismiss the bankruptcy case of Crane Enterprises, LLC ("**Debtor**") pursuant to § 707 or § 1112(b) of the Bankruptcy Code (the "**Motion**"). Movants argue that the case should be dismissed because the Debtor's bankruptcy petition was filed by an individual without the authority to do so and filed in bad faith without a legitimate bankruptcy purpose and with the intention of circumventing ongoing state court proceedings. The Debtor interposed an objection (the "**Objection**"), in which Debtor argues that its management possessed the requisite authority to file the bankruptcy petition because the authority was granted to management by the Superior Court of New Jersey, Bergen County, Chancery Division, Probate Part (the "**Probate Court**"). Debtor also maintains that Movants lack standing to bring the Motion and that the facts of the case do not evidence a bad-faith filing, but rather Debtor's good faith attempt to gain control of and monetize its only asset to pay off creditors and other stakeholders.

For reasons explained further below, Movants' motion to dismiss Debtor's bankruptcy case is denied. Applying the legal framework governing dismissal, the Court concludes that the facts of this case do not demonstrate that Debtor's petition was filed in bad faith. The Court further concludes that the record demonstrates that David M. Repetto and Stuart Reiser possessed the necessary authority to file Debtor's bankruptcy petition. Thus, dismissal of this case is not warranted.

The Court acknowledges and regrets that the drafting and issuance of this decision took longer than the time specified in 11 U.S.C. § 1112(b)(3).

## BACKGROUND

### A.  The Debtor's Bankruptcy

Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 4, 2025. *Chapter 11 Voluntary Petition for Non-Individual*,[1] Dkt No. 1 ("**Petition**"). The Debtor is owned 50% by the estate of Rhoda Crane and 50% by the estate of Joyce Crane. *Affidavit Pursuant to LR 1007-2 of David Repetto*, Dkt No. 7 ¶ 2. The estates of Rhoda and Joyce Crane have court-appointed administrators, respectively David. M. Repetto and Stuart Reiser (the "**Administrators**"), who are overseeing the management of the Debtor. *Id.* ¶ 2–3. On February 25, 2025, the Administrators adopted a resolution by unanimous written consent to file this bankruptcy case on behalf of the Debtor. *See Resolution or Other Statement Authorizing Filing Pursuant to LR 1074-1*, Dkt No. 6.

The Debtor is organized as a limited liability company and holds a single asset: 99 shares in a cooperative residential corporation. *See* Petition, Schedule A/B. In connection with the issuance of these shares, the Debtor entered into a proprietary lease that granted Debtor the right to possess the two-bedroom cooperative located at 360 Shore Road, Apt 8L, Long Beach, NY 11561 (the "**Property**"). *See id.* The Property's sole secured lien arises from maintenance arrearages that are accumulating as a priming lien on the Property in the most recently reported cumulative amount of approximately $32,896.71 as of February, 2025.[2] Debtor's remaining non-administrative liabilities consist of sums reportedly owed to two law firms: (1) $13,747.40 owed to Harwood Lloyd LLP for litigating state court eviction proceedings on behalf of the Debtor, and (2) $350,000.00 owed to Wilk Auslander LLP ("**WA Firm**") on account of a guarantee Debtor reportedly signed to pay for the legal fees expended in the *In Re Treasures and Gems, Ltd*

---

[1] All citations to the docket are to the docket of the above-captioned case unless otherwise noted.
[2] *See Crane Enterprises, LLC v. Crane et al.*, Adv. Pro. No. 25-01040, Dkt No. 6 ¶ 10.

3

case that were billed beyond the stipulated attorney carve-out of $152,500 for the WA Firm. *See* Petition; *see also Motion to Approve: A) Bidding Procedures, Including Scheduling an Auction for the Debtor's Building; B) Form of Auction Notice; and C) Stipulation with Kenden, LLC*, Case No. 24-10570, Dkt No. 32, Exhibit B. Atypically for single asset real estate cases, there is no mortgage or other secured debt associated with the Property.

## B. The Eviction and Probate Proceedings

As relevant background, Movants resided at the Property before this Court issued a decision and order granting the Debtor turnover of the Property. *See Crane Enterprises, LLC v. Crane et al.*, Adv. Pro. No. 25-01040, Dkt Nos. 10, 11. When Michael Crane's aunt, Rhoda Crane, died and probate proceedings concerning her estate ensued, the Probate Court issued a judgment relating to the Debtor dated February 4, 2022 (the "**NJ Judgment**") finding that "Michael Crane has never held any vested ownership in Debtor at any time, whatsoever," and "Michael Crane has no right whatsoever to reside or occupy any property owned by Crane Enterprises, LLC." *See* Objection, Exhibit 1 (attaching the NJ Judgment). After the NJ Judgment, Debtor commenced an eviction action (the "**Eviction Action**") against Michael E. Crane in the Civil Part of the Nassau County District Court of the State of New York (the "**District Court**") to remove him from the Property. Although Mr. Crane produced what he alleges to be a lifetime $1.00-per-year lease for the Property, on November 18, 2024, the District Court ordered Michael E. Crane evicted (the "**Eviction Judgment**") and granted a stay of execution through January 31, 2025. Michael E. Crane did not move for reconsideration or seek an extension of the stay of execution of the Eviction Judgment or a stay pending appeal.[3] On December 23, 2024, Michael

---

[3] The Eviction Action was decided in the District Court of the State of New York, County of Nassau: First District located in Hempstead at Index No. LT 4282/22. The Appeal is pending before the Appellate Term of the Supreme Court of New York for the 9th and 10th Judicial Districts at Index No. 2024-1395. Despite the Court's diligent efforts

E. Crane filed and perfected an appeal (the "**Appeal**") of this suit to the Appellate Term, Second

Department of the Supreme Court of the State of New York. *See* Opposition. This Court lifted

the automatic stay to allow Movants to pursue the Appeal. *See* Dkt No. 34.

## JURISDICTION

This Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157(b),

1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska,

C.J.). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2) because it concerns a motion

to dismiss the debtor's bankruptcy petition. This Court possesses the authority to enter a final

judgment in a core proceeding "arising under title 11" consistent with Article III of the United

States Constitution. *See Stern v. Marshall*, 564 U.S. 462, 474–75 (2011); *see also In re Fairfield*

*Sentry Ltd. Litig.*, 458 B.R. 665, 674 (S.D.N.Y. 2011) (proceedings arise under title 11 "when the

cause of action or substantive right claimed is created by the Bankruptcy Code"). Venue is

proper in this District under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### A. Legal Standard

Section 1112(b)(1) of the Bankruptcy Code provides that a case may be dismissed "for

cause." Section 1112(b)(4) enumerates scenarios in which the court can determine that "cause"

exists, but the list is illustrative, not exhaustive. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304,

1311 (2d Cir. 1997). Courts have determined that a finding that a bankruptcy case was filed in

bad faith can constitute "cause" for dismissal under § 1112(b). *In re AAGS Holdings LLC*, 608

B.R. 373, 382 (Bankr. S.D.N.Y. 2019); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d

Cir. 1999) (collecting cases); *id.* at 1310.

---

to locate the docket of either of these cases, this Court was unable to find the docket or records relating to the
Eviction Action or the Appeal.

"A petition is filed in bad faith 'if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.'" *AAGS Holdings LLC*, 608 B.R. at 382–83 (quoting *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir.1991)); *accord In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("The standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found.") (emphasis omitted).

Courts in the Second Circuit examine a number of factors that are viewed as indicative of a bad faith filing:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*C–TC,* 113 F.3d at 1311 (quoting *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992)). These factors "are generally applied in single asset real estate cases. . . ." *AAGS Holdings LLC*, 608 B.R. at 383. In considering the above-listed factors, courts should not apply the factors mechanically but rather consider all the facts and circumstances of the case as no one factor is determinative. *Id.* at 383 (citations omitted). Courts have concluded that a debtor filed its chapter 11 petition in good faith when the debtor was experiencing a

difficult financial situation and needed to reorganize, but courts have also found that a debtor

filed its petition in bad faith when the debtor had no reason to reorganize or rehabilitate and the

petition was filed "merely [to] attempt to avoid litigating issues in state court." *Fraternal*

*Composite Servs. v. Karczewski*, 315 B.R. 253, 257 (N.D.N.Y. 2004).

Additionally, "[i]t is settled that the lack of authority to file a voluntary chapter 11

bankruptcy petition by the party filing it constitutes an independent ground for 'cause' for relief

under § 1112(b) of the Bankruptcy Code." *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, No.

18-12043 (JLG), 2018 Bankr. LEXIS 2909, at *14 (Bankr. S.D.N.Y. Sep. 25, 2018) (citing *In re*

*NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858 (Bankr. N.D. Ill. 2014) ("In addition to 'cause'

under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a

bankruptcy case filed by a corporation.")). In so arguing, the Movants bears the burden on proof.

*Id.* (citing *In re Quad-C Funding LLC*, 496 B.R. 135, 141–42 (Bankr. S.D.N.Y. 2013) (holding

that on a motion to dismiss, the movant bears the burden of proof even where movant contends

that the voluntary bankruptcy petition was filed by someone lacking the authority to do so.)).

## B. Analysis

Though Movants argue for dismissal under either § 707 or § 1112(b), the plain language

of § 707 states that the provision applies only to bankruptcy cases filed under chapter 7 of the

Bankruptcy Code, not cases such as this one filed under chapter 11. 11 U.S.C. § 707 (the Court

"may dismiss a case *under this chapter*") (emphasis added). Thus, § 707 does not provide a legal

basis for dismissal of Debtor's bankruptcy case.

This decision first addresses Movants' contention that bad faith is present on the premise

that the Administrators lacked the authority to file the Petition as the Administrators failed to

domesticate the NJ Judgment and obtain ancillary letters of administration. Movants base their

contention on the view that New York CPLR § 5402 requires domestication of the NJ Judgment to have authority under New York law to act on behalf of the Debtor.

As the Debtor is a New York limited liability company governed by New York law, Movants are correct that New York state law governs the authority to file the Debtor's bankruptcy case. *See In re Quad—C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) ("[T]he Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, courts initially look to the state law governing the entity.") (citations omitted); *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 Bankr. LEXIS 2909, at *14–15 (Bankr. S.D.N.Y. Sep. 25, 2018). However, Movants' reliance on CPLR § 5402 is misguided. Article 54 of the CPLR specifies the process by which an out-of-state judgment may be registered to enforce such a judgment in New York jurisdictions. The provision is inapplicable here because the Administrators are not seeking to enforce the judgment in New York but were acting in their capacity on behalf of an LLC to authorize Debtor's bankruptcy filing. The estate's asset is an interest in an LLC, not direct ownership of real property. The NJ Judgment specifically granted Mr. Repetto the authority to act on behalf of the Debtor and to dispose of the Property on behalf of the estates – the deceased shareholders of Crane Enterprises, LLC. NJ Judgment ¶ 22–31 ("David M. Repetto is authorized to retain all necessary agents to market and sell Crane Enterprises, LLC, or the real property owned by Crane Enterprise LLC located at 360 Shore Road, Apartment 8L, Long Beach, New York, 11561."). Movants cite no law, rule, or regulation that would require an estate administrator in New Jersey to domesticate a judgment granting them authority or otherwise taking administrative steps to act on behalf of a New York limited liability company where the Administrators were not enforcing a judgment in New York courts, but rather were taking other

8

steps (namely commencing a bankruptcy case) where that act fell within authority already granted to them by the New Jersey Probate Court. In other words, the Administrators' authorization to file a bankruptcy petition differs from the direct judgment-enforcement measures that are governed by CPLR § 5402. Beyond Movants' failure to identify applicable law supporting their contentions, this Court's own research identified no such law.

Further, the terms of the appointment of David M. Repetto were sufficient to authorize him to act on behalf of the Debtor to file this chapter 11 bankruptcy case. On January 27, 2021, the Probate Court entered an order appointing David Repetto as Administrator C.T.A of the estate of Rhoda Crane. *See Crane Enterprises, LLC v. Michael Crane*, Supreme Court of the State of New York, County of Nassau, Index No. 612063/24, Dkt No. 17. The NJ Judgment affirmed his appointment, and authorized him to, among other things, manage the financial accounts of the Debtor and dispose of the Property. NJ Judgment ¶ 6 ("David M. Repetto's appointment as Administrator C.T.A. of the Estate of Rhoda Crane is affirmed."); *id.* ¶ 22–31 ("David M. Repetto is authorized to retain all necessary agents to market and sell Crane Enterprises, LLC, or the real property owned by Crane Enterprise LLC located at 360 Shore Road, Apartment 8L, Long Beach, New York, 11561."). Mr. Repetto is the President of the Debtor, and Stuart Resier, as administrator for the estate of Joyce Crane who owns the remaining 50% of the Debtor, is the Secretary and Treasurer of the Debtor. *See Affidavit Pursuant to LR 1007-2 of David Repetto,* Dkt. No. 7; *see also* NJ Judgment ¶ 24. Together, the Administrators adopted a resolution by unanimous written consent to file this bankruptcy case on behalf of the Debtor with the intention of selling the Property. *See Resolution or Other Statement Authorizing Filing Pursuant to LR 1074-1*, Dkt No. 6. These facts demonstrate that the Debtor's Petition was filed by individuals with the proper authority to do so. The Court sees no evidence that the

9

Administrators' powers were altered or revoked or that the Administrators were dismissed or

otherwise discharged. This stands in stark contrast to Michael Crane, one of the two Movants,

who has been determined by the New Jersey court to have no "vested ownership interest" in the

Debtor and who has shown no evidence that he is authorized to act for or dictate the decision-

making of the Debtor.

Turning to the *C-TC* factors governing dismissal due to bad faith pursuant to § 1112(b) of

the Bankruptcy Code, the Court finds that half of the factors are present, but the other half are

not, and the facts and circumstances surrounding the case demonstrate that the Debtor is a

limited liability company that engaged in a good-faith bankruptcy process to regain access to its

property and liquidate its illiquid asset so that it would be able to pay off its creditors and,

ultimately, return any available surplus funds to the Debtor and its owners – the estates of Rhoda

and Joyce Crane.

The second, third, fourth, and fifth *C-TC* indicators of bad faith are not present because

the Debtor is not subject to a foreclosure action or using bankruptcy to delay proceedings in

other courts, and the Debtor does not have a large secured creditor nor is this case largely a

dispute between the Debtor and its secured creditor. In fact, these factors highlight that this case

does not raise the concerns that are presented in the typical bad-faith single asset case, namely,

an obligor's misuse of bankruptcy processes to frustrate legitimate entitlements of secured

lenders where there is no hope of reorganization or rehabilitation of the debtor. To the contrary,

here, the Debtor has consistently pursued, for over six months, a path intended to facilitate the

promptest possible payment of Debtor's stakeholders. Other *C-TC* factors are present: (1) the

Debtor has only one asset – the Property; (2) the Debtor has little to no cash flow, (3) Debtor

can't meet current expenses, including the payment of maintenance fees for the apartment, and

(4) the Debtor has no employees. While these four factors are present, the Court notes that two factors are mitigated by the specific facts of this case: the Debtor has no cash flow and is unable to meet current expenses because the Debtor has spent years litigating to remove Movants from the Property. And, in the circumstances, the Court concludes that the *C-TC* factors that are present are outweighed by facts that do not support labeling this a bad-faith bankruptcy.

Again, and to emphasize, in this case, two administrators of the estates of two deceased sisters are attempting to sell property owned by an LLC to pay off creditors and distribute the rest of the proceeds to the beneficiaries of the estates. The Administrators have been unable to do so because of Movants' presence on the premises and their sustained resistance to the Administrator's efforts. The Administrators took action to, among other things, pursue and secure turnover pursuant to § 542 of the Bankruptcy Code predicated on the unstayed state-court Eviction Judgment. At the hearing on this Motion, Debtor listed a few benefits of this bankruptcy filing, including a sale process with less delay and expense. Debtor's counsel noted that the Administrators believe that selling the Property through bankruptcy is in the best interest of the Debtor. In viewing the factors holistically in light of the facts and circumstances of this case, the Court finds that the Debtor filed for bankruptcy as a good faith effort to resolve the fact that it is unable to pay the fees associated with its only asset, let alone gain possession and control – in other words, to navigate a liquidity crisis that was otherwise not solvable on a sufficient timeline without engaging in a bankruptcy process. Thus, the Court concludes that Debtor has not filed this case as an improper attempt to circumvent litigation, and that the Movants have not met their burden of demonstrating bad faith.

The Court has also reviewed the cases cited by Movants in the Motion, and finds these cases to be materially distinguishable, especially the *Murray* case relied upon heavily by

Movants. *See Wilk Auslander LLP v Murray (In re Murray)*, 900 F.3d 53, 57–58 (2d Cir 2018).

That case involved an involuntary bankruptcy filing initiated by a creditor law firm, the WA

Firm, that was seeking to enforce a judgment awarding the firm fees. *Id.* at 56. The bankruptcy

court dismissed the case because there were adequate state law remedies for the WA Firm. *See

id.* at 61–63. Here, by contrast, the Petition was filed voluntarily by the Debtor itself in the

business judgment of the Administrators with the intention of regaining possession of Debtor's

only asset and, further, of selling it to pay off creditors and distribute the remaining proceeds to

the Debtor's equity holders. There accordingly is no taint here of self-interested outside creditors

attempting to usurp control of an entity and force it into a bankruptcy designed to serve the

specific creditor entity, quite possibly at the expense of the entity itself or its other creditors.

To the extent the Movants assert an improper bankruptcy purpose based on the fact that

the WA Firm is the largest creditor of the estate on account of a guarantee of legal fees for work

performed on behalf of a separate, commonly-owned entity that also was in bankruptcy, such

arguments aim more towards the merits of that claim than to the permissibility of the bankruptcy

itself. These issues could best be resolved through the claim objection process, and do not

demonstrate bad faith in the bankruptcy case itself. The WA Firm claim does cause one to raise

one's eyebrows, and Debtor is encouraged in the exercise of its fiduciary duties to examine the

claim's legitimacy, reinforced and/or supervised by the Office of the United States Trustee, but

that claim alone does not establish that the bankruptcy itself was filed in bad faith.

In sum, Movants have failed to demonstrate that "cause" exists to dismiss Debtor's

bankruptcy case pursuant to section 1112(b) of the Bankruptcy Code.

The Debtor also argued that Movants lacked standing to move to dismiss the case. The

Movants respond that they have a variety of financial interests in the Debtor, at least as estate

beneficiaries, as well as continuing litigation stakes regarding their asserted leasehold interests to the Property. The standing issue need not be resolved in light of this decision's resolution of the merits of the dismissal motion.

To the extent this Decision and Order does not specifically address any arguments raised by the Movants, those arguments are rejected as not presenting a material reason to dismiss the case.

## **CONCLUSION**

For the reasons stated above, the Movants' motion to dismiss Debtor's bankruptcy case is DENIED.

**SO ORDERED.**

Dated: New York, New York
         November 17, 2025

                            *s/ David S. Jones*
                            Honorable David S. Jones
                            United States Bankruptcy Judge